GULF & S. I. R. Co. *v.* BRYANT.*

(Division A. April 18, 1927.)

[111 So. 451. No. 26439.]

MASTER AND SERVANT. *Employer held liable for coercing, under threats, inexperienced youth to continue work in cold and rain, there being no assumption of risk.*

There was a violation of master's duty to warn of danger and no assumption of risk, so that master was liable, where on third day of an inexperienced youth's employment as a section hand, and after he had been compelled by the foreman to discard his red sweater, a cold rain started, and he told the foreman that he was cold and sick and wanted to quit, and the foreman continued to refuse him leave to do so and coerced him by threatening "to beat hell out of him." if he did not continue at his work.

*Corpus Juris-Cyc. References: Master and Servant, 39CJ, p. 811, n. 45.

APPEAL from circuit court of Covington county.
HON. W. L. CRANFORD, Judge.

Action by John Bryant, a minor, against the Gulf & Ship Island Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*T. J. Wills,* for appellant.

39 C. J., page 518, states the general rule as to assumption of risk. The federal statute applying, the appellee assumed the risk of the dangers incident to his work. The fact that he was a minor does not in any sense relieve him of the assumption of the risk of the dangers that are apparent and open so that one of his age and experience and capacity would in the exercise of ordinary care know and appreciate. *Cudahay Packing Co. v. Frank Marcan, minor, by next friend,* 106 Fed. 645, 54 L. R. A. 258; *Derringer v. Tatley,* 157 N. W. 811, L. R. A. 1917 F 187.

The fact that appellee complained to the section foreman that he was wet and cold and was directed and ordered to go back to work does not relieve him of the assumption of risk or place liability on the master for the inconvenience and suffering occasioned by the exposure to the cold and rain. See *Stenbog v. Minn. Transfer R. R. Co.,* 108 Minn. 199, 121 N. W. 903, 25 L. R. A. (N. S.) 262; *King v. Interstate Consolidated Street Ry. Co.,* 23 R. I. 583, 70 L. R. A. 924.

This court has decided this question in *Yazoo City Transportation Co.* v. *Smith,* 78 Miss. 140, 28 So. 807. If it were contended that the act of the section foreman was willful in requiring him to work until the track could be made safe for the train to run over, the answer would be that the necessity for the safety of the travelling public required that this should be done.

*E. L. Dent,* for appellee.

It was so manifest from the pleadings and uncontradicted evidence that appellee did not assume the risk of being forced by threats of violence to work in the extraordinary and unusual cold and rain without sufficient clothing, that appellant did not even request an instruction to the jury on the assumption of risk. No condition could arise under the Federal Employers' Liability Act, the common law or the statute of any of the states of the Union, whereby a person could be forced into involuntary servitude, except on conviction of crime, as appellee was forced to work in the cold, sleet and rain without sufficient clothing. See *Annie Hough et al.* v. *Texas Pac. R. R. Co.,* 25 L. Ed. 612, where the supreme court of the United States deals fully with the assumption of risk. 39 C. J., 518, cited by counsel for appellant, does not apply to the facts in this case. See however, 39 C. J., pages 689, 800, 1292.

*City Transportation Co.* v. *Smith,* 78 Miss. 140, 28 So. 807, cited by counsel for appellant as decisive of the question in the case at bar, may be clearly distinguished. In that case, no physical force, threats of bodily harm, or involuntary servitude was involved. The injured servant was a full grown deck-hand. A case strikingly similar to the one at bar is *Carrl* v. *Interstate Consol. R. R. Co.,* 23 R. I. 593, 51 Atl. 305.

McGOWEN, J., delivered the opinion of the court.

In the circuit court Bryant, a minor, seventeen years of age, recovered a verdict and judgment for seven hun-

dred fifty dollars damages for failure of duty on the part of the railroad company to treat him in a humane manner, while he was engaged in their employment as a section hand working on its track, by forcing him to work, against his will, in cold, rainy weather, without the necessary clothing to protect him from the cold and rain, and failing to warn him of the risk.

The railroad company pleaded to the declaration that the railroad company and the plaintiff were engaged in interstate commerce, and that Bryant took the risk; that the Federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665) controlled the measure and manner of recovery in this case.

The proof showed that Bryant worked one day for the railroad company in a red sweater, and that the section foreman, who hired and discharged men at will, ordered him not to wear the red sweater, and stated that as red was a signal of danger it was against the rules of the railroad company to wear it. Bryant worked the next day without his sweater. He returned to work at eight o'clock a. m. on the third day, and at about nine o'clock it began to rain. He testified that at 9:30 he was cold and sick from the cold rain as he had on cotton trousers and shirt and overalls, the section foreman having ordered him to leave his sweater off. He testified, further, that the section foreman had on his raincoat, and the other three section hands had on coats. He stated that he applied to the section foreman for leave to quit work, and was told that "eight hours" constituted a day's work and to get back to work; that he continued to work, shoveling dirt under cross-ties, and such other work as came to hand, ate his lunch from his lunch bucket at the noon hour, in the rain, and returned to work; that at 2:30 p. m. the section foreman had built for himself a fire, and was warming himself thereby and thereat, when he (Bryant) applied to him again, and told him that he was sick and wanted to go home, to which request for leave to quit work the section foreman replied in a rude,

angry, and threatening manner, peremptorily ordering him to go back to work or he would "beat hell out of him." Bryant worked all that day, according to his testimony, and went home that night in the rain, and from the exposure he had a "spell" of illness from which he had never recovered. He stated that at the time he was employed by the railroad company he weighed one hundred forty-nine pounds, and at the time of the trial he weighed one hundred twenty-seven pounds. At the time of Bryant's employment by the railroad company its track was jacked up at the place of his employment, and it would have been dangerous for a train to undertake to cross over the track at that point.

There is no question that the proof shows that the boy was an inexperienced country boy; that the railroad company was short of labor, and, if the boy had not worked in the emergency (the track being jacked up), it would have been the duty of the section foreman to leave the fire and take a hand to get the railroad track adjusted for the passage of trains.

The court below refused a peremptory instruction asked by the railroad company, which was requested by it, no doubt, on the general rule that:

"The master is not required to warn and instruct an inexperienced or youthful servant as to risks and dangers which are patent and obvious to persons of ordinary intelligence. The experience or lack of experience of the servant must be considered; and if, through youth, inexperience, or other cause, a servant is incompetent fully to understand and appreciate the danger, although patent and obvious, it is the duty of the master to warn and instruct him fully, and failing to do so, he is liable."

It is generally true that a person who is capable in intelligence enough to understand the physical effects of heat and cold upon his body assumes the risk for a continuance in service, and cannot recover for the suffering and inconvenience directly due or caused by the exposure to extreme cold and rain.

We have examined all the authorities submitted to us by counsel for appellant, and are constrained to say that we think it is true that the authorities are not in point, for the reason that the section foreman, who had direct charge of this boy, employed him and ordered him not to wear his sweater; he ordered him where and when to work, and had a right to discharge him. They were out upon the track, the foreman and his gang of three or four men, where no one else could hear them or intervene, and at a time when the boy was suffering and complaining of his suffering; the grown man, whose duty it was to warn and direct, ordered the boy to continue in service after he knew, or should have known, that the boy was not clad as were he and the other men. And no reason is interposed here for the conduct of the section foreman. We are persuaded to say from the proof that the continued refusal of the section foreman to permit the plaintiff to leave the place and seek shelter from the rain, accompanied by his threat "to beat hell out of him," amounted to coercion of the plaintiff; that the plaintiff's continuance in service cannot be said to have been voluntary. While recovery is not on account of the language used, yet the section foreman's language indicates, and was proof sufficient to warrant the jury in believing, that the plaintiff did not voluntarily assume the risk in this case, and that the section foreman violated his duty to warn the boy to seek a place of shelter and proper clothing if he were sick and cold in his then condition—unduly clad and exposed to elements that the other grown men about him were not exposed to, and from which the section foreman himself was snugly protected.

Counsel for appellant relies mainly upon the "Cold Sunday" case, reported as *Yazoo City Transportation Co.* v. *Smith,* 78 Miss. at page 140, 28 So. 807, which case is differentiated from the case here under review in these particulars: (1) The cotton was covered with ice and snow, and, as a result of working in the ice and

snow on this, a cold Sunday of history, the laborer lost three fingers because they were frostbitten. In this case here under review we have already said that there was coercion. In the Smith case there was no coercion, and the laborer was presumed to have knowledge of the effect of cold and ice upon his person. There was no threat shown in the record that the mate and captain ''would beat hell out of him'' if he did not work in the ice and snow, and, of course, he voluntarily assumed the risk, for he made no complaint. (2)  The cases are differentiated in that the record in the ''Cold Sunday'' case shows that no protest was made by the laborer or his associates. In the instant case vigorous protest was made, and the section foreman was advised of the plaintiff's condition. (3)  This was the third day this seventeen-year-old boy had been employed in the service of the railroad company. He was a country boy, inexperienced, and was advised that his red sweater was objectionable to the company.  (4)  He was a minor—seventeen years of age— and thought the section foreman was armed at the time he threatened ''to beat hell out of him.''  Smith was not shown to be a minor.  (5)  The deck hand was presumably experienced, while the plaintiff in this case was inexperienced.  In fact, these marked distinctions may be said to apply to all the cases cited by counsel for appellant, except to the Cudahy case (C. C. A.) 106 F. 645, 54 L. R. A. 258, wherein the court distinctly held that the servant knew as much of the risk and danger as did the master.

We think where physical force is used or threatened by one in authority over the servant, which results in physical suffering and damage to the servant, the general rule of assumption of risk will not apply, and the authorities are clear that the assumption of risk must be voluntary. In this case we think the plaintiff was coerced by the foreman in charged of the gang to continue to work in the rain and unusual cold over his protest, and cannot be said to

have voluntarily assumed the risk incident to his employment.

*Affirmed.*