### PITTMAN et al. v. SCHULTZ.
### No. 9985.

Circuit Court of Appeals, Fifth Circuit.

Jan. 21, 1942.

S. E. Morse, of Gulfport, Miss., for appellants.

R. W. Thompson, Jr., and Webb M. Mize, both of Gulfport, Miss., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for damages for personal injuries. The claim was that plaintiff suffered them while, and because of, attempting to carry out an order defendant had negligently given him requiring the performance of work in an improper and dangerous way.

The defenses were (1), that the work in which plaintiff was engaged was one of construction where the work conditions were subject to constant change and the risks incident thereto were therefore assumed by him as a part of the necessary conditions under which it had to be done; and (2), that his injuries were not the result of any negligence on the part of defendant, but of his lifting a weight which, upon the undisputed evidence, was not too heavy for him and if it was beyond his strength, this was a matter better known to him than to defendant and the risk of which he assumed. There was a trial to the jury[1] and a verdict for plaintiff. De-

---

[1] The evidence established or tended to establish: that plaintiff while and as a result of attempting to carry out a direct order of the foreman, received a serious injury. The general work on which he, with other employees, was engaged, was the construction of a warehouse. The particular work was handling, under the direction of Brown, their foreman, bundles of iron rods or rein-

fendant is here complaining of the refusal of his motion to direct a verdict and, as on the weight of evidence, of the following charge: "If you should believe that any witness has wilfully, knowingly and corruptly sworn falsely to any material fact in the case, then you may disregard the testimony of any such witness altogether."

Appellant's first point that the injury occurred on a construction job and as the result of necessarily changing conditions of which plaintiff assumed the risk, misapprehends the nature and basis of plaintiff's claim and is without support in the record. Plaintiff's injuries were not sustained as the result of his voluntarily taking a dangerous course in the midst of changing conditions on the construction job, within City of Tupelo v. Payne, 176 Miss. 245, 168 So. 283. They resulted as they did in Norton v. Standard Oil Co., 177 Miss. 758, 171 So. 691, and in Carey Reed

forcement steel to be used in pouring the roof on the warehouse; the steel was in rods 30' 3" long which were placed in bundles of approximately 30 rods each, each bundle weighing about 350 pounds. Normally three, and occasionally four, men were used to handle these rods. Their duties consisted of picking the rods up from the ground, wrapping wire around the bundles, putting them on a ramp approximately 4' 4½" high and then on to a warehouse dolly about 2½' high. The dolly was a 4 x 4—18" lengthwise dolly, crossbarred with either 2 x 4's or 4 x 4's which were loose. After the rods were loaded on the dolly, the foreman used his Ford car to pull the dolly to the crane and the crane hoisted the iron for the roof. The work was a hurry up job, the men were required to work at top speed, the work was too heavy for three men, and there had been some complaint. Just before the injury occurred the dolly broke down and could not be pulled any further. Brown then instructed the plaintiff and the other two men to jack up the dolly and then to change the load to another dolly. Two of the bundles were about to fall off, and these were picked up by the three men standing on the ground, without difficulty. When it came to getting the bundles off the dolly, as plaintiff testified to it, the following occurred: "I was standing there thinking about it, looking at the steel, wondering how we could get it off." Mr. Brown said: "Schultz, what the hell are you standing there for?" I said, "I am figuring out how to get this steel off." He said, "Get on top of it." "There just wasn't anything else I could do."

"Q. Did he order you to get up there? A. Yes, sir.

"Q. Had the other two boys picked up their ends of it? A. Yes, sir.

"Q. What did that throw you to do? A. To pick up the middle.

"Q. Did you pick up the middle? A. Yes, sir.

"Q. Then what did you do? A. I picked it up sufficient to step off the dolly as quickly as I could, then it threw me and that is all I know until I came to my senses. An awful pain got me in this side of the back. A bundle of iron was resting on my knees."

He further testified: "We had four men to handle the steel but not very often.

"Q. Now, then, could three men handle that steel all right or not? A. No, sir.

"Q. Why couldn't they? A. It was too heavy.

"Q. Did you ever protest to Mr. Brown that it was too heavy work for three men to do? A. Yes, sir, he said he would give us help but he never did.

"Q. When you would complain of the work being too heavy, what if anything, did he say to you? A. He said, 'If you can't do the job, you might as well go home or get somebody else'.

"Q. So that was the situation confronting you at the time he ordered you to pick the heavy rods up? A. Yes, sir.

"Q. With you in the middle and the other two men on the end, was the amount of iron by picking up the middle, lighter or heavier than on the end? A. It was over one-third heavier."

He further testified in answer to questions:

"Q. Was there any other way that you could have moved that load of iron after the dolly broke down without climbing up on the dolly? A. Yes, sir, if I had the time sufficient to do it, I could have taken the steel and used my knees. I could have gotten in this position and moved them up to where I could have laid it down on the ground. Then, if I could have stepped over it and got it on the right side, then I could have picked it up and put it over here a whole lot better than I could in the position I did." "Carrying out Mr. Brown's orders, I had to step down two or two and one-half feet. As I stepped down, the weight all went on one foot, my right foot, and that was the time I felt the strain.

"Q. Had you ever had to at any time prior to this in handling that iron, been required to go on top and handle it that way? A. No, just that one day."

Company v. McDavid, 6 Cir., 120 F.2d 843, 844, from the failure of the defendant, to furnish a safe way to do the work, its positive acts in requiring plaintiff to do it in an unsafe way. For the reason that this is so, appellant's second defense that the cause of the injury was merely a voluntary overlifting by plaintiff and therefore not actionable within Harris v. Pounds, 185 Miss. 688, 187 So. 891, is equally untenable. What caused the injury here was not the voluntary act of plaintiff in overlifting. It was the awkward posture and position in which plaintiff was required by the peremptory order of his foreman to place himself in handling the load, coupled wth the insufficient force with which, over his protest he was required to do the work. The case is ruled by Natural Gas Engineering Corp. v. Bazor, Miss., 137 So. 788; Jefferson v. Denkmann Lbr. Co., 167 Miss. 246, 148 So. 237; Hardaway Contracting Co. v. Rivers, 181 Miss. 727, 180 So. 800; Montgomery Ward & Co. v. Lindsey, 6 Cir., 104 F.2d 882; Gulf & S. I. R. Co. v. Bryant, 147 Miss. 421, 111 So. 451, 52 A.L.R. 901; Goodyear Yellow Pine Co. v. Mitchell, 168 Miss. 152, 149 So. 792, 150 So. 810; Everett Hardware Co. v. Shaw, 178 Miss. 476, 172 So. 337, 173 So. 411.

 That the method of performing the assigned task was negligence is conceded. The district judge charged the jury that if they believed that plaintiff voluntarily chose this method he could not recover. He conditioned plaintiff's recovery on a finding that he took the action he did because and only because of the orders of his employer directing him to do it. There was positive, indeed overwhelming evidence that the work in general was being done under hurry up orders and that plaintiff was injured while attempting to carry out a peremptory and specific order to do the work in a negligent way. In these circumstances, under the law of Mississippi, whose statutes [2] in effect provide that an employee shall not be held to have assumed the risk of his employment in any case where injury or death results in whole or in part from the employer's negligence, it may

not be contended that the case was one for a directed verdict for defendant. Appellant's complaint against the charge as on the weight of the evidence is equally without merit. We may concede what seems to be a little in dispute between counsel, that such a charge would constitute reversible error if the case had been tried in the state court. This however will not avail appellant. For there is no rule in the Federal court that it is reversible error to comment as was done here. This court may not reverse cases for insubstantial error.[3] Abstract inerrancy is hardly possible in the trial of a case in the federal court and is never essential to a trial there.[4] It would be difficult to imagine a case where the evidence would be so balanced that this court would find prejudicial error in the giving of the charge here complained of. The claim of error is particularly insubstantial here.

The judgment is affirmed.

<hr>

[2] Section 513, Code of 1930.

[3] Section 391, Title 28 U.S.C.A. provides " * * * on the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

[4] Jennings v. United States, 5 Cir., 73 F.2d 470; Community Natural Gas v. Henley, 5 Cir., 54 F.2d 59; Maryland Casualty v. Reid, 5 Cir., 76 F.2d 30.