AUSTIN ET AL. *v.* MOBILE & O. R. Co.

[98 So. 3. No. 23388.]

(Division A. Jan. 21, 1924. Suggestion of Error Overruled Feb. 18, 1924.)

1. MASTER AND SERVANT. *Engineer who applied emergency brakes injuring switchman held not negligent.*

Engineer on engine pushing six flat cars, who without signal applied emergency brakes and brought the train to a sudden stop on signal from conductor, when a cow made an effort to cross in front of the train, and who thereby caused a switchman riding on the front end of the front car to be precipitated over the end of the car *held* not negligent, in the absence of evidence that he knew that the switchman was in a position of peril, or that he should, or could have given a signal.

2. MASTER AND SERVANT. *Ordinary risks incident to employment assumed.*

An employee assumes the ordinary risks and dangers incident to his employment.

3. MASTER AND SERVANT. *Injury due to assumed hazards of occupation not actionable.*

The master is not liable for injuries to the servant where the injury was not the result of the master's negligence, but was due to the assumed hazards of the occupation.

APPEAL from circuit court of Lowndes county.

HON. THOS. B. CARROLL, Judge.

Suit by W. A. Austin, administrator of the estate of W. C. Austin, and others, against the Mobile & Ohio

Railroad Company.  Judgment for defendant, and plaintiffs appeal.  Affirmed.

*G. J. Rencher,* for appellants.

A motion for a peremptory instruction is just the same as a demurrer to the evidence.  *Swan* v. *Liverpool, etc., Insurance Company,* 52 Miss. 704, 5 How. 552, 23 Miss. 592, 43 Miss. 180.  The motion admits all that the evidence proves or tends to prove; it admits all reasonable inferences that may be fairly drawn from the evidence and should never be given unless there "can be no room for doubt."  *Swan's case, supra; Mississippi Central Railway Company* v. *A. T. Mason,* 51 Miss. 234; *Myers et al.* v. *Lamb F. Lumber Co.,* 64 So. 727.

Where the court is doubtful or there is a conflict of inferences that different minds might reasonably draw from the evidence or the circumstances or the physical facts the matter should be submitted to the jury.  *Louisville & N. R. Railroad Company* v. *Garnet,* 93 So. 241; *Gulf & S. I. R. Co.* v. *Prince et al.,* 79 So. 62; 26 R. C. L., page 1067; *Billingsly v. I. C. R. Co.,* 56 So. 790.

The peremptory instruction should not have been granted.  *Porter* v. *Neismith,* 87 So. 5; *Buil* v. *Clay,* 90 So. 446; *Jones* v. *Knotts,* 70 So. 701; *American Trading Company* v. *Ingram-Day Lumber Co.,* 69 So. 707; *Ala., etc., Ry. Co.* v. *Daniel,* 66 So. 730; *Offett* v. *Barrett,* 63 So. 333; *Jefferson et al.* v. *Southern Ry. Co.,* 62 So. 643; *Fuller* v. *I. C. Ry. Co.,* 56 So. 783; *Thornhill's case,* 63 So. 674; *N. O. and N. E. Ry. Co.,* v. *Brooks,* 38 So. 40; *Brooks* v. *Yazoo & M. V. Ry. Co.,* 72 So. 227; *Western Ry. of Alabama* v. *May's,* 72 So. (Ala.) 641; 5 Elliott on Railroads (3 Ed.). page 666, 69 N. E. 12, 37 U. S. (Law Ed.) 642; same 1107; 108 N. E. 962; 29 So. (Ala.) 602, *I. C. Ry. Co.* v. *Turner,* 14 So. 450.

The lower court in sustaining the motion for the peremptory instruction expressed doubt as to the correctness of its conclusion by saying: "I don't know whether I am right about this conclusion or not." *Holmes* v. *Simon et al.* 15 So. 70; *Maxie et al.* v. *Laurel Hospital,* 93 So. 817.

In the opinion the court said:—"In considering the propriety of a directed verdict the evidence in favor of the party against whom such a verdict is given must be treated as proving every material fact which it either proves directly, or by reasonable inference."

We insist that we had a right to go to the jury and granting of the peremptory instruction is fatal error.

*J. M. Boone* and *Carl Fox,* for appellee.

Our court, in the case of *Railroad* v. *Downs,* 109 Miss. 140, held that defendant would not be liable for injuries resulting from the ordinary hazards of the business. *Crossett Lumber Co.* v. *Lamb,* 84 So. 15. Under the evidence in this case it is perfectly clear that deceased was injured by an ordinary incident in switching cars which was just as obvious to deceased as it was to any other of the switching crew, and is covered by the principle laid down in the case of *Y. and M. V. R. Co.* v. *Hollum,* 119 Miss. 229.

The declaration alleges that it was the duty of deceased to look out for obstructions upon the track and that at the time this accident occurred he was in the discharge of his duty standing on a front car for that purpose, and it is perfectly natural that the deceased, standing upon the front car in broad daylight on the lookout for obstructions, as his duty required him to do, saw the cow as soon as she broke loose from the boy and broke towards the track, as soon as the conductor did, and that both he and the conductor naturally and involuntarily would give the stop signal for the applica-

tion of emergency brakes; and the overwhelming, convincing testimony on this subject is that both the conductor and deceased gave this signal.

We contend that whether or not deceased gave the signal for the train to stop was not a material issue in the case for the reason that under the law deceased was not in such a position that it became necessary under the law for him to have special notice given to him that the train was going to be stopped to prevent a collision with the cow. One member of the crew is just as much obligated to look out for obstructions as any other member thereof. The conductor says he and the deceased were standing, "with our elbows right together talking about where they were going to put these cars." All the witnesses testified they were standing near together, and therefore each could see the cow as well as the other, and if the conductor gave the signal, the deceased, standing right by him, would necessarily see him give the signal.

The facts in the case of *Spengler* v. *Williams*, 6 So. 613, and the case of *I. C. R. Co.* v. *Seamans*, 31 So. 546, make those cases rest upon an entirely different principle of law. Appellant claims that in order for defendant to get the benefit of the assumption of risk it must be set up in a special plea. This is not necessary when defendant relies upon the risk ordinarily incident to the employment, nor is it necessary when relying upon the risk of extraordinary hazard known to the party injured, as decided in the *Hollum* and *Downs* cases, *supra*.

The court below in his opinion gives the reasons why he sustained the motion for a peremptory instruction on each phase of the case. He saw the witnesses, observed their demeanor, the circumstances under which they testified, their location with reference to the accident; and although he is averse to granting peremptory instructions, yet the evidence was so convincing in this case he felt compelled to do so; and we think that the reading

of the opinion of Judge CARROLL in this record will convince this court that his action in granting a peremptory instruction was correct.

Argued orally by *G. J. Rencher,* for appellant, and *J. M. Boone,* for appellee.

HOLDEN, J., delivered the opinion of the court.

The appellant, W. A. Austin, administrator, brought this suit against the appellee, railroad company, for the death of W. C. Austin, alleged to have been caused by the negligence of the railroad company. At the conclusion of the testimony a peremptory instruction to find for the defendant was granted by the court; from which judgment this appeal is prosecuted.

The case, in substance, is this: The deceased Austin while engaged in his work as a switchman in the railroad yards at Columbus was riding on the front end of a flat car which was being pushed ahead of five other flat cars by the engine up the main line track intending to place the cars on a spur track, and, while the cars were being thus pushed ahead of the engine up the main line, a cow made an effort to cross the track in front of the train. The deceased and the conductor were standing close together in the front end of the front car at the time, and in order to prevent striking the cow the conductor signaled the engineer, who could see him from the engine window, to immediately stop the train, whereupon, in compliance with the signal to immediately stop, the engineer applied the brakes to his engine and suddenly stopped, causing the slack to run out of the six flat cars, and the sudden stop or jerk precipitated the deceased over the end of the front car, which ran over and killed him.

The evidence is conflicting in some respects regarding the position of the deceased and that of the conductor,

but taking the testimony favorable to the appellant as being true, it appears the deceased was standing somewhere near the front end of the front car in the train that was being pushed by the engine, and that his back was to the engineer, and the conductor was near and behind the deceased, the conductor being between the deceased and the engineer. The engineer gave no signal or notice that he was about to make the sudden emergency stop. The speed of the train is not involved in the case.

The declaration of the plaintiff below contained four counts, and we have given careful consideration to each of them, and we are convinced there is not sufficient merit in any one of the last three counts to warrant a discussion of them in this opinion. The first count in the declaration, however, has given us considerable trouble in determining whether or not the testimony in the case supported the ground of negligence alleged therein, and whether or not the lower court was correct in granting the peremptory instruction in favor of the railroad company.

The first count puts the negligence of the railroad company upon the ground that, at the time the engineer made the sudden or violent stop without giving notice or warning to the deceased, he (the engineer) could see the deceased standing at the front end of the front car in a position of peril, and that he knew, or ought to have known, that a sudden application of the emergency brakes would suddenly stop the cars and precipitate the deceased over the end of the car to his death. This count in the declaration was not specifically drawn so as to clearly present the ground of negligence named, but we gather enough from it to satisfy us that it sufficiently alleges negligence by failure to warn the deceased when the engineer could see his position of peril.

After an extended and patient examination of the proof in this record we have reached the conclusion the proof

does not sustain this count of the declaration.  We are unable to see wherein the engineer was guilty of negligence in making the sudden stop under the circumstances shown in the record.

The cars were being pushed forward by the engine and the deceased was standing at the front end of the front car.  The conductor was also standing near and back of the deceased.  When the cow attempted to cross the track in front of the moving train, it was the duty of the conductor and the deceased, both of whom could see the cow, to signal the engineer to stop quickly.  The conductor did signal the engineer for an emergency stop, and it was the duty of the engineer to comply with the signal and make the sudden stop with the emergency brakes.  It is not definitely shown in the record how close the deceased was to the end of the car, nor is it disclosed by the proof, either direct or inferential, that the engineer from his position could see the distance of the six car lengths and realize that the deceased was in a position of peril, if he in fact was in a perilous position, at the time the emergency brakes were applied.

It was not shown that the deceased did not know the sudden stop would be made, nor was it proven that the engineer knew or should have known that the deceased was not prepared to brace and protect himself against the effect of the sudden stop.  The engineer was duty bound to respond to the stop signal of danger given by the conductor, and it was reasonable for him to assume that the deceased would protect himself against the ordinary hazard incident to such sudden stops.

Furthermore, the record fails to disclose any testimony showing how the engineer was negligent in failing to warn the deceased before making the sudden stop.  The evidence does not show what kind of notice or signal the engineer was in duty bound to give the deceased before responding to the signal given by the conductor. Was he to sound a blast of the whistle?  It is not shown.

Was the engineer under duty to make a slow stop so as not to cause the jerk or jar when the conductor had signaled for a quick and violent stop? We find no testimony in the case showing what should have been done by the engineer under such circumstances to warn the deceased.

It may be well argued that if the deceased was standing close to the edge of the front end of the car, and the engineer from where he was could see and know that a sudden stop would precipitate the deceased over the end of the car and kill him, and the engineer realized the perilous position and knew or ought to have known that the deceased did not know a sudden stop was going to be made under the circumstances, then a different question as to the negligence of the engineer might arise. But the plaintiff below failed to show that the engineer saw and realized that the deceased was in a position of peril requiring warning at the time he made the sudden stop in compliance with the signal given by the conductor.

It is a well-settled principle of law that the employee assumes the ordinary risks and dangers incident to his employment. This record discloses without dispute that the deceased switchman was familiar with the risks of sudden stops, and that from knowledge and experience he would be expected to protect himself against the danger of such emergency stops. And it is especially true in this case that the deceased ought to have protected himself against the sudden stop, because he was on the front car close to the conductor and must have seen the danger of the cow attempting to cross the track and ought to have known a quick stop would be made by the engineer to prevent striking the cow.

It is true the proof shows the deceased's back was toward the conductor who gave the stop signal and toward the engineer who made the stop and that the engineer saw him. Nevertheless deceased was there and knew, or should have known, what was going on and ought to have

anticipated the sudden stop made by the engineer. The engineer testified that the deceased himself gave the signal to make the sudden stop. This was disputed by a witness and of course we are assuming for the sake of discussing the question of the peremptory instruction that the deceased did not give the stop signal and that he did not see the conductor give the signal because his back was toward the conductor and the engineer at the time.

However, as we have said, the engineer back in his engine some three hundred feet away did not know and realize that the deceased was so close to the edge of the car that a sudden stop would jerk him over the end of it, nor that he would not protect himself against the sudden stop. It is not clear from the proof that the deceased was in fact in a position of peril, unless it was as an incident to his employment, and certainly the evidence does not warrant the conclusion that the engineer knew of the perilous position of the deceased and that it was his duty to either refuse to make the stop when signaled to do so by the conductor or else give some notice or warning, not shown in evidence, to the deceased before applying the emergency brakes.

It is regrettable that the deceased lost his life in the unfortunate manner reflected by this record. The case of a faithful employee who loses his life in the service of the master through the dangers of his employment always excites sympathy. But the courts must follow the law and relieve the master from the payment of compensation where the evidence shows the injury was not the result of his negligence, but was due to the assumed hazards of the occupation. In such cases the charitable inclinations of the employer must be depended upon for amelioration.

The judgment of the lower court is affirmed.

*Affirmed.*