NEW ORLEANS & N. E. R. Co. v. JAMES.

(Division A.   June 9, 1930.)

[128 So. 766.   No. 28641.]

Bozeman & Cameron, of Meridian, for appellant.

**Reily & Parker**, of Meridian, for appellee.

**Cook, J.**, delivered the opinion of the court.

The appellee, W. C. James, instituted this suit in the circuit court of Lauderdale county, Mississippi, against

the New Orleans & Northeastern Railroad Company, seeking to recover damages for personal injuries alleged to have been sustained by him as a result of the negligence of the locomotive engineer in charge of the locomotive on which the appellee was employed as a fireman, and from a verdict and judgment in favor of the appellee in the sum of ten thousand dollars this appeal was prosecuted.

The declaration alleged in substance that the appellee was engaged in interstate commerce, as a locomotive fireman working on a switch engine in the yards at Meridian, Mississippi; that, while the locomotive had come to a stop in the course of its switching movements, it became the duty of the appellee fireman to go from the cab of the locomotive through a door or opening on the front thereof and onto the running board along the side of the locomotive, for the purpose of oiling the automatic bell ringer; that ordinary care required that the locomotive should be kept stationary or still while the appellee was engaged in the performance of this duty; that, while undertaking to perform this duty, and while the appellee was in the act of passing out of the cab of the locomotive and onto the running board, the engineer carelessly, negligently, and in wanton disregard of the rights and safety of the appellee, caused the locomotive to move with a sudden, improper, and reckless jerk, thereby rendering the appellee's position dangerous, and causing him to be violently knocked, jerked, and thrown from the locomotive onto the ground and railroad tracks, from which fall serious injuries to the appellee resulted.

The appellee testified that he had been working for the appellant railroad company about eleven years as pumper, hostler, and locomotive fireman, and was an experienced fireman and engineman; that as fireman he was under the direction of the engineer who was in charge of the locomotive; that on the day he was injured he went to work about eight o'clock in the morning at his regular

job as fireman of a switch engine in the Meridian yards, and was injured about eleven o'clock; that the switch engine was equipped with an automatic bell ringer and also with a bell cord by which the bell could be rung when the automatic ringer was not working; that on this particular morning the automatic bell ringer was not working, and the appellee, as fireman, was ringing the bell when necessary by pulling the cord; that twice during the morning the engineer instructed him to oil the automatic bell ringer, but he did not then do so; that the bell was located on top of the locomotive some distance in front of the cab, and, in order to oil it, it was necessary to pass out of the cab through a door in the front thereof onto a running board alongside of the locomotive.

As to the incidents occurring at the time of his injury, he testified that they pulled up to a point near Twenty-Second avenue with fifteen or twenty cars, and there stopped for some reason; that the engineer then instructed him to oil the bell ringer; that, while the locomotive was standing still, he took his oil can and started out of the cab window or door; that just as he put his left foot out of the cab door, and, while he was in a stooping position, the locomotive was moved with a very hard jerk, thereby causing him to be thrown onto the ground and cross-ties of the track. He described the jerk of the locomotive as being "sudden," "unexpected," "unusual," "and very hard." Other witnesses testified to the fact of the sudden jerk and the apparent severity thereof; while several witnesses for the defendant denied that there was any jerk or unusual movement of the switch engine and train of cars. Over the objection of the appellant, the appellee and his witnesses were permitted to testify that it was a rule, or universal custom, among the employees on the locomotives in this yard, that an engineer should not move his locomotive while the fireman was engaged in the performance of duties on the running board of the locomotive, but that this rule was not among

the written rules promulgated by the officials of the company. The evidence further showed without conflict that the door leading from the cab onto the running board opened outside against the boiler, and that the opening was fourteen inches wide and six feet high. The running board was twenty-eight inches wide, and above it, extending the entire length of the running board, there was a metal handhold for the use of any one standing or walking on this running board.

The engineer who was in charge of the locomotive testified that at the time the appellee fell therefrom he was engaged in a hurried switching movement in order to clear the track for a show train that was due thereon. He denied that the locomotive stopped at or near the point where the appellee fell, or that he instructed the appellee to oil the bell ringer. He testified that the bell ringer had not been working during the morning, and that the fireman had consequently been using the bell cord to ring the bell; that he did not at any time during the morning in question instruct the appellee to oil the bell ringer; that just before he fell the appellee said to him, "I am going to oil the bell ringer," and he, the engineer, replied, "suit yourself;" that, when these statements were made by the respective parties, the locomotive and train were moving, being then engaged in a switching movement, and that no stop of any kind was made until after the appellee fell from the locomotive; that he was then seated on the engineer's side, and was leaning out of the cab window watching for signals; that he did not see the appellee start to go from the cab onto the running board, and had no knowledge whatever of the fact that the appellee was then leaving, or attempting to leave, the cab, and did not know that he had fallen until he heard an outcry on the fireman's side of the locomotive, and went over there to investigate. He testified further that on account of the fact that the boiler extended back into the cab he could not see the fireman when he was in his

place on the opposite side of the locomotive, and could not see the door leading from the cab onto the running board, and that on account of that fact, as well as the fact that he was leaning out of the cab window watching for signals, he did not see the appellee when he started out of the cab, and did not know when he climbed out of the door or window of the cab. He further testified that it was not unusual for employees to perform duties on the running board of the locomotive while it was in motion, and denied that there was any rule or custom among the trainmen in this yard that an engineer should keep the locomotive standing still while the fireman performed his duties on the running board, and he emphatically denied that there was any unusual or sudden jerk of the engine at or about the time the appellee fell. Other employees on the cut of cars also testified that they did not observe any unusual jerk of the locomotive.

The first assignment of error is based upon the action of the court in admitting, over the objection of the appellant, testimony to the effect that there was an unwritten rule or custom among the trainmen in the Meridian yards that, as a measure of safety, a locomotive should not be started or moved while the fireman thereon was engaged in the performance of duties which required him to be on the running board of the locomotive. The question for the decision of the jury was whether, under all the facts and circumstances in evidence, the engineer exercised ordinary care in the operation of the locomotive, and we think the testimony as to the rule or custom was admissible as bearing upon that question, and would become material in determining that issue, provided the locomotive was standing still and the engineer moved it with a sudden and violent jerk at a time when he knew, or by the exercise of ordinary care should have known, that the fireman was in the act of climbing onto the running board. This brings us to the consideration of an assignment of error based upon an instruction granted to the appellee which reads as follows:

"The court charges the jury for the plaintiff: That the engineer in charge of the engine from which the plaintiff fell, was in the employment of the defendant at that time in handling the said engine, and the defendant is, therefore, liable for and chargeable with the negligence of such engineer, if any, in handling the said engine; and it was the duty of such engineer to use reasonable care in handling such engine, to avoid injuring the plaintiff while working on or about the said engine in the performance of his duties as an employee of the defendant, and a failure to use such care would be negligence; and if you find from a preponderance of the testimony that the plaintiff was undertaking to pass from the cab of such engine onto the running board thereon, and while so engaged the engineer in charge of the said engine improperly, carelessly and negligently caused the said engine to be moved violently and suddenly, and if you further find from a preponderance of the testimony that such movement of the engine was dangerous and calculated to cause injury to the plaintiff, and if you further find from a preponderance of the testimony that the plaintiff was caused to fall and be injured as a proximate result of such negligence, if any, it will be your duty to return a verdict for the plaintiff."

This instruction permitted the jury to determine the question of whether or not the engineer was negligent from the fact of a sudden and violent jerk of the engine while the appellee was undertaking to pass from the cab window onto the running board, without reference to whether or not the engineer had notice or knowledge that the appellee was so undertaking to pass from the cab window onto the running board, and was in a position of danger if the engine was moved. The appellee testified that the movement or jerk of the engine, as described by him, would not have been attended with any sort of danger to him if he had been in the cab and had not been attempting to pass therefrom onto the running

board.  Consequently the evidence established that the movement of the engine, even if it was sudden and violent, as described by the appellee, would not have constituted negligence, or any breach of duty which the engineer owed to the fireman, if the appellee had been at his usual place within the cab, and, unless the engineer knew, or by the exercise of ordinary care should have known, that the appellee was leaving the cab and was in a position in which a sudden and violent jerk would be dangerous to him, the engineer is not chargeable with any negligence in making the alleged movement.  Austin v. M. & O. R. R. Co., 134 Miss. 226, 99 So. 3; Gulf, M. & N. R. R. Co. v. Wells, 275 U. S. 455, 48 S. Ct. 151, 72 L. Ed. 370.  While the engineer testified that he had no notice or knowledge of the fact that the appellee was undertaking to pass from the cab onto the running board, we think there was sufficient in the testimony offered by the appellee to authorize the submission to the jury of the question of whether or not he knew, or ought to have known, that fact, but for the error indicated in the above-quoted instruction the judgment of the court below will be reversed, and the cause remanded.

Reversed and remanded.