New Orleans & N. E. R. Co. *v.* Benson.

(Division B.   Oct. 10, 1938.   Suggestion of Error Overruled Nov. 7, 1938.)

[183 So. 505.   No. 33160.]

**Bozeman, Cameron & Bozeman**, of Meridian, **J. Blanc Monroe**, of New Orleans, La., and **Sidney S. Alderman**, of Washington, D. C., for appellant.

Reily & Parker, of Meridian, for appellee.

Argued orally by **Ben Cameron**, for appellant, and by **Marion W. Reily**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This is a suit brought under the Federal Employers' Liability Act, 45 U. S. C. A., secs. 51-59, for damages sustained by the appellee on account of a personal injury sustained by him, when he lost his leg, while employed as a switchman in the railroad yards of the appellant at Meridian, Mississippi. The right of recovery is based on the alleged negligence of the engine foreman of the switching crew who caused a box car to be "kicked" onto the wrong switch track of the yards at a

time when the said foreman is alleged to have known, or by the exercise of reasonable care should have known, that the plaintiff was likely to be injured or killed by such negligent operation. Plaintiff obtained judgment for the sum of $17,500, and the defendant railroad company appeals.

The principal ground for reversal urged here is the r · fusal of the court below to grant a peremptory instruction in favor of the defendant; and it is therefore necessary to a proper understanding and decision of the legal question involved that the facts relied on to sustain the judgment shall be substantially set forth herein.

At the time of the accident, the switching crew, other than the engineer and fireman, was composed of the engine foreman, Cunningham, to signal the engineer and generally superintend the switching movement, the switchman, Colston, to follow near the cut cars so as to cut them loose when they were to be "kicked" onto the tracks of their respective destinations, and the plaintiff, Benson, known as the "fieldman" and whose duty it was to throw or line up the switches in the field which comprised an intricate and extensive system or network of tracks in the switching yard. Before undertaking to place any of the cars onto particular tracks on the occasion complained of, the plaintiff, in company with the engine foreman, made a "tab" or written memorandum of the switch track destination of each of the fifteen cars that were to be placed, as also shown by the markings on each car, and this "tab" was retained by the plaintiff, showing that the first car was to go into track Number 5, the second into track Number 7, the third into track Number 2, the fourth and fifth into track Number 7, the sixth into track Number 5, and the seventh (which was marked as an "M & N" car) to go into "New Yard" track Number 1. The plaintiff had performed his duty of throwing or lining up each of the switches in the field while the above-mentioned cars were being "kicked" to their respective destinations up to the time that the

second switching movement was to be made onto track Number 5. There, he was missed from his post of duty by the other switchman, Colston, who found it necessary to throw and line up this switch Number 5 in plaintiff's absence, and at a time when Colston was in plain view of the engine foreman, Cunningham. Plaintiff testified that before leaving his post of duty he signaled the engine foreman, as it was his right to do, and by a sign well understood among railroad men, for permission to be excused for the purpose of answering a call of nature; that the engine foreman answered the signal giving his consent; that plaintiff left his work and went to a nearby place between a standing box car on what was known as the "scrap-bin" track and the "scrap-bin," which was an uncovered platform about 30 feet long and 18 feet wide on which scrap iron, et cetera, was placed for shipment; that this was the usual and customary place where many of the men went on such a mission when working in that part of the yards, there being no other convenient and suitable place for use at that time; that the engine foreman knew of such practice of the men in that regard; that the place between this standing box-car and the "scrap-bin" was only a space of 19 inches where the men placed themselves to be concealed from public view on one side by the box-car and on the other by the "scrap-bin;" that while he was so situated the engine foreman, after "kicking" a car into track Number 5 in the plaintiff's absence as aforesaid, negligently threw the "M & N" car into the "scrap-bin" switch and caused it to "kick" into the standing cars on the "scrap-bin" track, between which and the "scrap-bin" he was situated, causing a portion of his leg to be cut off; that it was the duty of the engine foreman to have seen to it, in the absence of plaintiff from his post of duty, that the switches were properly lined up to throw the said "M & N" car into New Yard track Number 1, where it had been designated to go under the mutual understanding had between said engine foreman and the plaintiff immediately

prior thereto; that this car could not have possibly gone into the wrong track if this duty of the engine foreman had been performed; that it was the duty of the engine foreman in each instance, before causing a car to be "kicked" into any of the tracks, to await a signal from the "field-man," showing that the switch had been properly thrown or lined up for the particular switching movement to be made, or to otherwise assure himself of such fact; and that under the general practice followed, the crew worked "short-handed" in the absence of the "field-man," when another member of the crew would perform his duties until his return.

We are of the opinion that the testimony, although conflicting in many material respects, was sufficient to make an issue for the jury on each of the foregoing propositions; and that there was sufficient evidence on which to submit to the jury the question of whether or not the engine foreman knew, or by the exercise of reasonable care should have known, that the plaintiff was in a position of peril and would likely be injured by the "kicking" of a car down the "scrap-bin" track in violation of the pre-arrangement and understanding that it should go into New Yard track Number 1; that since there was no car in the entire cut of cars destined to go into the "scrap-bin" track the plaintiff had the right to assume that he was in a safe place, and did not assume the risk or danger of a car being diverted therein, either as a known or obvious danger, or as one of the ordinary risks or dangers incident to his employment.

But, it is urged on behalf of the appellant, that there can be no liability in this case unless the engine foreman knew that the plaintiff was so situated as to be in a position or peril and likely to be injured by the act complained of; and that it was not sufficient to establish liability for the proof to merely show that the engine foreman should have known of the danger by the exercise of reasonable care. Numerous decisions are cited to support this contention as to the rule in cases governed

by the Federal Employers' Liability Act. However, we are of the opinion that the cases relied upon are distinguishable from the case at bar in that the employee sought to be charged with negligence in those cases was not shown to have knowledge of any facts which would have enabled him, by the exercise of reasonable care, to anticipate that the injured employee was in a position of peril, and consequently, under such circumstances, it was held necessary for him to have known of the danger in order to have been guilty of negligence. We think that the correct rule applicable to the present case is announced in the following cases, which hold if the person charged with negligence knew, or by the exercise of reasonable care should have known, of the danger he is negligent in not avoiding it, if he could have done so by the exercise of reasonable care: New Orleans & N. E. R. R. Co. v. James, 157 Miss. 607, 128 So. 766; Pennsylvania Ry. Co. v. Lutton, 6 Cir., 29 F. (2d) 689; Gulf, M. & N. R. Co. v. Collins, 151 Miss. 240, 117 So. 593; Newton v. Homochitto Lbr. Co., 162 Miss. 20, 138 So. 564; Chesapeake & O. R. R. Co. v. Mihas, 280 U. S. 102, 50 S. Ct. 42, 74 L. Ed. 207. These and many other decisions, both state and federal, which have been called to our attention, recognize this to be the test of liability.

It is next insisted that the custom of the men to go to the particular place where the plaintiff was situated on such a mission must have been well established and uniform in order to charge the engine foreman with knowledge that the plaintiff had gone there. This rule, however, applies only when a party is sought to be held to have contracted with reference to a custom, and does not apply in negligence cases. It was sufficient to show, as was done in this case, that the men resorted to this particular place with sufficient frequency to cause the engine foreman, with knowledge of such practice, to have good reason to believe that he had gone to that place. It was the only suitable and convenient place within a reasonable distance for him to go on that occasion, on

account of the toilets located some distance away having become frozen and out of order a few days prior thereto. It is true that he could have gone under the "scrap-bin," the floor of which was less than four feet from the ground, but it would have still been necessary to go in and out through the space of nineteen inches between the "scrap-bin" and the box car, and to be in a standing position there at least while adjusting his clothes. This fact, if found by the jury to have been known to the engine foreman under all of the circumstances testified to, was sufficient to render him guilty of negligence in "kicking" the car to that place. It is true, as announced in the authorities cited by appellant, that a switchman is required to look out for his own safety in the yards, and that he assumes the risk of cars being switched to and fro along the tracks where the switching movement is being conducted, but he does not assume the risk, nor is he required to anticipate, that a car will be switched into a different track than the one on which he has been assured it would be placed. The engine foreman admitted, in effect, that he knew it would be dangerous to "kick" the car down there if he had known, or had good reason to believe, that the plaintiff had gone to that particular place.

Under all the circumstances testified to, we think that the question was one for the jury as to whether the injury was caused by negligence of the defendant within the rule correctly announced by the instructions; and no errors appear in the record such as would require a reversal of the judgment.

Affirmed.