## E. M. HOWD *v.* MISSISSIPPI CENTRAL R. R. Co.

1. RAILROADS — LIABILITY FOR DAMAGES. — The rule of law, as established in England and most of the American states, is that a servant accepting employment for the performance of specific duties, takes upon himself the natural and ordinary perils incident to the service which are exposures from the negligence of fellow servants in the same common employments. N. O. J. and G. N. R. R. Co. v. Hughes, MSS. Opinion Book D, page 226.

2. SAME — LIABILITY TO EMPLOYEES FOR NEGLIGENCE OF FELLOW - SERVANTS. — The master is not liable for injuries which may happen to a servant in his employment, unless the master is culpable, that is chargeable with negligence or carelessness, either in respect to the act that caused the injury, or in the employment of the person who caused it, or keeping him in service after notice of his unfitness, or after, with the use of proper diligence, he ought to have known it. In order to hold the company responsible to an employee (such as a conductor) for injuries sustained because of the road or its appurtenances being out of repair, it must be shown that the company is in default in its duty, either by the selection of incompetent servants or an insufficient number of them to do the work, or failure to furnish proper materials, or that the company had notice of the bad condition of the road, or is chargeable with negligence for not knowing.

ERROR to the Circuit Court of Marshall County. Hon. O. Davis, Judge.

The facts in this case are fully stated in the opinion of the court.

*Walter & Scruggs* and *J. Z. George,* for plaintiff in error.

It is conceded on all hands that it is the duty of a railroad com-

pany to *construct* its road so as to be safe. The instructions of the defendant below concede this point.

We insist that the same duty devolves on the company to keep its road in *repair* that controls it in its *construction*. Why not? Precisely the same agencies are employed in both; the same materials are used; compensation for labor comes from the same source, and the same great duty to the public is involved. It is an inherent duty of the company. It is *its* duty; is organic and continuous, and springs out of the very law of its creation.

The act, incorporating the company, declares that it " is hereby vested with all the rights, privileges and powers requisite and necessary for the *construction, repair* and *maintenance*," etc. The moment the privilege of construction is claimed the company assumes the duty to make construction, repair and maintenance secure. The act of incorporation makes no discrimination between the duty of building and the duty of repairing. Each is an organic, inherent duty, which the company owes to the state and every one of its citizens. *Each is its duty.* There may be some correllative duties due from one class of servants of the company to another class outside of this inherent or organic duty. The organic duty requires the company to have an ordinarily safe track, safe switches and safe locomotives. The correlative duty of one servant to another, is to see that the switch is properly placed, and the locomotive tender properly loaded.

We propose to notice briefly the authorities which sustain us in the position that it is the duty of a company to keep its road in good repair, not only as to the public but also as to its servants. The case of Buzzell v. The Laconia Co., 48 Me., 113, was that of a servant suing a master for an injury caused by the defective *repair* of a bridge.

In Noyes v. Smith, 28 Vt., 59, the doctrine is clearly announced that it is as much the duty of the master to keep his buildings in repair as to construct them.

The same doctrine is held in Massachusetts, in Cayzer v. Tay-

lor, 10 Gray, 274, and in Coombs v. Cordage Co., 102 Mass., 572. In the latter case the court says that "it is perfectly established that an employer is under an implied contract with those whom he employs, to adopt and maintain suitable instruments, means, etc." "The implied contract to have the machinery in such a safe and proper condition as not to expose the servant to unnecessary risk, is the foundation of the master's liability." In Connecticut, in Hayden v. Smithville Co., 29 Conn., 548, the court seems to differ from the above views.

The court expresses its regret at the adoption of the foregoing precedent, but felt bound to follow it. We may concede that Connecticut is against us.

New York — Kearnan v. Western, 4 Seld., 175 — ably vindicates the position for which we contend. That case can scarcely be said to be shaken by the case of Warner v. The Erie R. R. Co., 39 N. Y., 471. The reasoning and weight of authorities are certainly with the dissenting opinions in that case, and with the decisions of the same case by the supreme court. 49 Barb., 558. In Brickner v. N. Y. Cen. R. R., 2 Lans., 506, the court attempts to escape the effect of Warner's case in 39 N, Y., by holding a company liable for contributory negligence in failing to keep a bridge in repair.

In Pennsylvania, in the case of O'Donald v. Alleghany R. R., 59 Penn., 239, the court holds the doctrine that a company is liable for injury sustained by its servant in consequence of defective materials.

In Maryland, in case of Wonder v. Bal. & O. Co., 42 Md., 411, the court seems to hold some views adverse to our position. 3 American R., p. 147.

In Alabama, in the case of Williams v .Taylor, 4 Por., 234, and of Walker v. Bolling, 22 Ala. St., 294, the whole doctrine is reviewed and ably decided in support of our views. It may be said, however, that this case is shaken, if not entirely overturned, by the case of M. & O. R. R. v. Thomas, 42 Ala., 672. And yet

the court in that case say, p. 714, "there can be no doubt a railroad company is responsible for injuries to their servants, resulting from its negligence." This is the point for which we contend. In Tennessee, in the case of Elliot, 1 Cold., 611, and Haynes, 3 ib., 222, the doctrine for which we contend is boldly and ably vindicated. In Kentucky, in Collins' case 2, Duvall, 114, some original and powerful views in support of our position are held. In fact it goes much further, and holds the doctrine that a company is responsible to a servant for the negligence of a fellow servant.

In Ohio, in the case of Stevens, 20 Ohio, 415 ; Barber, 5 ; O. St., 541, and R. R. Co. v. Keary, 3 Ohio St., 201, the doctrine for which we contend is fully maintained.

In Indiana, in Fitzpatrick's case 7, Ind., 436, this doctrine was contended for and fully sustained. We do not deny but that this case has perhaps been shaken by some later decision.

In Missouri, in the case of Gibson (46, No. 163), reported in 2 American R., 497, our position is ably vindicated. The company in that case was held responsible for a defective coupling of its cars. The authorities are also fully noted to the case as reported in 2 American Reports.

In Swett's case, 45 Ill., 197, the court holds that there is an implied contract between the company and its servants, that the former shall provide suitable track, rolling stock, etc, and for failure to perform this duty the company is responsible.

In view of all this uncertainty and confusion, the able commission which framed the Code, 1857, declares, at p. 299, that " every railroad company shall be liable for all damages which may be sustained by any person, in consequence of the neglect or mismanagement of any of their agents, engineers or clerks, or for the mismanagement of their engines."

This provision was wisely carried forward in the New Code, 1871, p. 534, sec. 2429. We have here a clear rule which removes all doubt, uncertainty and difficulty.

The Code intended to establish, and did establish a sound public policy by its enactment, a policy which a majority of the states had already established by judicial decisions. See Dixon v. Rankin, 1 Am. Rail. cases, 569. The cases of Cooper v. Mullins, 30 Georgia, 146; of Chamberlain, 11 Wis., 238; of Gellentwater, 5 Port. Ind., 339; of Stevens, 20 Ohio, 415; of 3 Ohio St., 201; of Gibson, 42 Mo.; of Collins, 2 Duvall, 114; of Greenleaf, 29 Iowa, 14; of Elliott, 1 Cold., 611. See, also, to repudiate the rule in some instances, and in others to warp and torture it.

To remedy all this confusion, uncertainty and doubt, the Code has established a plain and simple rule.

But suppose we are mistaken, we then advert to the position assumed in the commencement of this brief, and again repeat, that it is the *organic* and *inherent* duty of a railroad to keep its track and machinery in repair. It is responsible for rotten ties, broken switches, and defective machinery. It may not be required to *insure* all these, but it is bound to answer for defects which are discernable by men of ordinary observation, or which it might discover by the use of ordinary diligence, *no matter what materials or what kind of agents it employs.*

The master's duty is involved in the first instance and the servant's in the last. In reference to the track and machinery the company is not only bound to furnish the material and the agents, but also to see that the former is properly used by the latter. Should the servants neglect this the company would be bound for *their* neglect of *its* duties.

In the case of Robinson v. Harbour, 42 Miss., 795, this court threw a flood of light on the vexed question of dependent and independent covenants. May we not hope in the case at bar some rule may be established that will bring order out of the chaos of the many decisions pronounced upon the point in controversy. We might elaborate the point of the company's liability growing out of the *implied* contract of providing its servants with suitable track machinery, etc., but we simply state the point and again

call the attention of the court to the case of Coombs v. Cordage Co., 102 Mass., and the other cases before cited on this point.

*W. P. Harris,* for defendant in error:

The facts of this case do not warrant a recovery by the plaintiff below ; but as the general question of the liability of the employer to his servants, for injuries occasioned by the negligence of fellow servants, is one of the questions in the case, that question, with elements of which it is composed, will be briefly noted.

The propostion, that as a general rule, no responsibility attaches to the employer for such negligence, where he uses ordinary care in the selection of the servant in default, is established by a weight of authority unprecedented on this class of debateable questions. These authorities are already before the court, and their number is increased by the additions made in the brief of the associate counsel in this case. Indeed, every return of the periodical law pulications of the United States swells the list. Chicago & Alton R. R. Co. v. Murphy, 53 Ill., 336 ; 5 Am. Rep., 48. See the instruction in this case, 40 Mich., 105 ; 4 Am. Rep., 364, Judge Cooly. See large collection of authorities there. Shearman and Redfield on Negligence, p. 109 ; 2 Hilliard on Torts, 566.

It cannot be supposed that judicial assent, so weighty and so general, is not founded in the good sense and usage of mankind, and we confidently assert, that in all the industries of the world, the exemption of the employer or master is recognized and acted on.

The common sense of mankind would revolt against a different doctrine. The pungent allusions of the Scotch judge to the law of England, the ingenious argument of the Kentucky judge and the reckless assertions and off hand conclusion of the Tennessee judge to the contrary notwithstanding.

Controversy on the subject is now confined to two points :

1st. What is the care required in the employment of servants, and what is negligence in the retention of them ?

The answer is, ordinary care only, and knowledge or circum-

stances showing that the employer, by the use of that diligence (ordinary) which duty positively required, ought to have known of the incompetency where an incompetent servant is retained unnecessarily, to establish negligence in retaining incompetent servants. *Actual* incompetency is of itself not sufficient to render the employer liable. The actual doctrine — the true principle — is stated in the text of Shearman and Redfield, p. 114–15, §§ 90, 91; 2 Hilliard on Torts, 566–7.

I cite these text writers for convenience. The authorities on which they rest their conclusions are cited by them, and it useless to repeat citations on these points.

2d. Who are fellow servants within the general rule?

This question is settled by many enlightened adjudications. Those engaged under a common master, in the same general business, are fellow servants. Shearman and Redfield on Negligence, 124.

Let us look into the reasons and principles which enter into this question.

In the first place, the fundamental reason of the employer's exemption from responsibility to servants engaged in his employment, is that the servant impliedly engages to take the risks incident to his employment or service. Thes · are the known and usual risks, and amongst these is the risk from the negligence of those engaged in the same business. The master is not the insurer of the infallibility of those he employs, and on the other hand, the servant, especially if engaged in a hazardous work where negligence is necessarly attended with danger, is supposed to contemplate his risk, and, therefore, to be on the watch to avoid danger, and consequently is expected to report acts of neglect and cases of incompetency.

Giving this scope to the foundation of the rule, and it is not so broad as many authorittes warrant, and we find that it necessarily and rationally embraces those engaged in a common business under a common master, and then actual employment and connec-

tion such that one is endangered by the negligence of the other, where the conduct of each is under the daily observation of the other.

Certainly the conductors and engineers of trains are in such connection with switch tenders and flagmen, and the permanent employees to repair the railroad and to remove obstructions.

If we drop the test that one is not the fellow servant of another, unless one controls the other, or that the company is always liable to those servants who are injured by others *whom they do not control*, we at once overthrow the whole doctrine, because if I have the control of the conduct of others, I am responsible for their mismanagement (and there can be no other reason for this strange doctrine), and the neglect by which I am injured is my own. The result would be that the company would be liable in every case unless the servant contributed directly or indirectly to the accident.

This case is settled by decision in case of N. O., N. J. & G. N. R. R. Co. v. Hughes.

SIMRALL, J., delivered the opinion of the court.

This suit was brought by E. M. Howd, widow, against the Mississippi Central R. R. Co., to recover damages for the loss of the life of her husband from injuries received by the running off, and breaking of a portion of the cars of the company; William W. Howd, the husband, was a conductor, in the employment of the defendant, and was acting in that capacity on the train at the time the casualty occurred, causing his death.

The first count alleges that the company did not use due and proper care to have and keep its railroad in good repair and condition, but suffered and permitted its railroad in its road bed, cross ties, iron and the strength and condition of its track, to be in bad repair and condition, and knew such defect or could have known the same by the exercise of reasonable diligence, but the same was unknown to William W. Howd; and that the causalty which be-

fel the train of which he was conductor, and which caused his death, was attributable to the bad repair and condition of the railroad.

The second count alleged that it was the duty of the defendant to keep its rolling stock, engines, tender and cars in good order and repair. That the casualty was caused by the bad repair and condition of the engine tender, rolling stock, comprising the train, which was known to the defendant, or would have been known by the use of reasonable diligence.

No evidence was offered by the plaintiffs under the second count; and that may be dismissed without farther consideration. The effort was, under the general issue, to sustain the cause of action stated in the first count.

That count assumed, or affirmed by implication, that if the railroad was not in proper repair and condition to afford reasonable safety to a passenger train traversing it, and the casualty occurred by reason of the road being out of repair and in bad condition, which was known to the defendant, or might have been known by the use of reasonable diligence, but was unknown to Howd, the conductor, then the plaintiff can recover.

It is the duty of the master or employer to furnish his servant or employee with the materials, tools and appliances suitable for the performance of the service required of him. If the service is hazardous, and involves the use of implements and instrumentalities, in themselves dangerous, it is presumed that the servant accepts the service with the usual hazards incident to it; and that he has stipulated for wages, proportioned to the risk. But the master must use reasonable care, such as men of ordinary prudence employ; to provide safe implements and instrumentalities, suitable for the business.

The conductor of a train on a railroad assumes all the risks incident to the employment. But the company is under a duty, to exert reasonable care for the safety of its servants, by providing a safe railroad bed, bridges, rolling stock and machinery, and to

keep the same in proper repair and order.    In view of the magnitude of the undertaking, to properly equip, keep in repair and operate a railroad of the length and business of the defendants, extending from Canton, in this state, to Jackson, Tenn., and looking beyond that to the vast system of railroads with which this, and others in this state are connected ; so blended all over the country as to constitute the chief means of internal travel and commercial transportation — the questions affecting the relations of these corporations, with those in their service, and with the public, partake very much in importance, as we observed on a former occasion, of the nature of public questions.    And the rules which may be established by the courts, very largely affect the interests of the community.

Testimony was offered by both parties on the trial as to the condition of the road at and near the place of the catastrophe.    The witnesses of the defendant represented the road as safe.    The testimony for the plaintiff tended to show that it was dangerous because of decayed cross ties and loose spikes.    It cannot be determined with entire satisfaction what was the proximate cause of the accident.    There was evidence that one of the rails was entirely off the track, and the jury might have inferred that it had been removed before the train reached the spot, and that its displacement caused the tender and passenger coaches to be thrown off.

Upon all the controverted points upon which testimony was produced, the verdict can well be sustained unless the jury were misdirected by the court.    The entire body of the case is embraced in the instructions.

The first charge for the plaintiff was, that if the train was thrown from the track by reason of a defective road, and that fact was known to the defendant, or would have been known by the use of reasonable diligence, then the plaintiff could recover, if the defect was unknown to the conductor Howd, or could not be discovered in the nature of his employment.

The second instruction declares that it is the duty of the defendant to use reasonable precaution for the safety of its employees, and to furnish a suitable railway and keep it in such reasonable good conditition as not to endanger their safety.

The third charge makes the defendant liable if, with its knowledge or by the use of reasonable diligence, it would have known the road was in an unsafe condition for running trains, and Howd, the conductor, had not such knowledge or the means of knowing from the nature of his employment.

The fourth and fifth charges, in other forms of expression, embody the same ideas of the law.

The sixth charge declares that whilst the defendant would not be liable if it used reasonable and proper care in procuring suitable agents to keep up its track in order, and furnished suitable material to keep the same in repair, yet, if the defendant was negligent in the selection of agents to keep the track in repair, and knew of the defects of such agents, or could have known it by the use of ordinary diligence, and that the accident which caused the death of Howd was referable to an imperfect track, which was not known by him, or discoverable by the nature of his employment, and that defendant did know it, or might, with the use of ordinary diligence, have known it, then plaintiff ought to recover.

For the defendant the court charged that the burden of proof is upon the plaintiff; as to the bad condition of the road, or in not using proper care in the selection of agents, or in continuing them in service after notice of incompetency or negligence; and if the loss of the life of Howd, the plaintiff's husband, was caused by the negligence of the fellow-servants, the defendant is not liable, and that all persons employed by the same master in the same general business are fellow servants.

Since the case was tried in the circuit court, we have decided the case of N. O., J. & G. N. R. R. Co. v. Hughes, which disposes of many of the points argued by counsel.

The question most discussed by counsel is, whether the master is liable where the injury to the employee is the result of the negligence and carelessness of fellow servants.

In N. O., J. & G. N. R. R. Co. v. Hughes, decided at the last term, we accepted as the rule upon that subject, established by unbroken authority in England, and the concurrence of most of the American states, that in such circumstances, the master was not liable, unless he was chargeable in the first instance with the want of reasonable, ordinary care in the selection of his servants, or continued them in service after notice of their negligence or carelessness, or, it may be added, after he ought to have known of their unfitness, and could have known by the use of due and reasonable diligence, or after actual notice.   A railroad corporation must be responsible like a natural person, for all the consequences which befall an employee, that may be referred to its own negligence or carelessness.    We can only find the ideal personage in its organs and higher agencies for conducting its business.  The stockholders and owners of the franchises and property, act through agencies, and only through them.

The duty is devolved upon the corporation to maintain a railroad, rolling stock and motive power, with the usual and necessary appliances and accommodations, safe and suitable to the character of its business.

It must keep the road bed, cars, machinery, etc., in reasonably safe repair.   The implied undertaking with its conductors, engineers, brakemen, etc., and other grades of employees, is that it will use that measure of care, and caution which ordinarily prudent men would exert, in performing this duty.   But in the nature of things how shall its duty be met, as respects keeping the road in proper repair, its locomotives, cars, and other machinery. The board of directory, or managers, must meet together, consult and devise measures for the orderly management and conduct of the general business, and must intrust the various departments to suitable agents.    The details as respects the maintenance of the

track was shown in evidence in this case. Sections of the road are committed to a section master, with a corps of workmen. The corporation will have done all that could be reasonably required of it, when it exercised circumspection and prudence, in appointing employees, to observe the road, make the repairs, and when it put at their disposal suitable material for the work; and when it caused suitable supervision to be had over these local employees. For if a part of the road should become unsafe because of the neglect of such employees to make repairs, and should so continue for a length of time, sufficient to induce the presumption that the company knew of it, or ought to have known of it; then it is negligent and careless, and is liable to other employees, for injuries resulting therefrom. It was satisfactorily proved that the section master had workmen enough, and material enough to keep the part of the road assigned to him in repair. It was also his duty to report the condition of the road to the deputy superintendent, who for the purpose securing such notice represented the corporation. It was also the duty of the conductors to give him information of any part of the road being out of repair. Perhaps the preponderance of the testimony was that the road was reasonably safe. No report had been made to the proper officer, by any conductor, or other person that it was out of repair, or that the section master was derilect in duty.

It was distinctly stated in Wright v. N. Y. C. R. R. Co., 25 N. Y., 562, " that the railroad company knew or ought to have known of the defect which caused the injury." Negligence being the gist of the action, that must be brought home to the company, either by proof of their knowledge of the defect, or that they were negligent and careless in the selection of agents; or that after notice of incompetency, they remained in service. Hard v. Vermont C. R. R. Co., 32 Vt., 473 is emphatic on the same point. Also Warner v. Erie R. R. Co., 39 N. Y., 478. The argument on this point is summed up with great precision and terseness by Lord Cairns in Wilson v. Morry, in the House of Lords, Appel-

late Series, part 3 — "The master has not contracted to execute in person the work connected with his business, but to select competent persons to do so, and furnish them with adequate materials and resources for the work. If the persons so selected are guilty of negligence that is not the negligence of the master." The principle had an application in C. & A. R. R. Co. v. Murphy, 53 Ill., 336, which was an action by the administratrix of the deceased, who was a workman with several others, under one Hill, as foreman, whose duty was to examine all the trains that arrived at Bloomington, and make needed repairs. Deceased and fellow laborer had been at work about a freight train, and had started with their tools to the shop, where they were to be deposited; whilst walking between the rails of the main track, deceased was struck by a switch engine. This engine was under the immediate control of the yard master, and was used for various purposes on the yard grounds. It was conceded that the engineer upon the switch engine was careless (and waiving the question of want of care, on the part of the deceased), it was held that the deceased and engineer were fellow servants; and under the rule, accepted in that state, the corporation was not liable. In the case of Noyes v. Smith & Lee, 28 Vt., 61, the injury was occasioned by the explosion of an engine. It was held to be the duty of the master, to use reasonable care in procuring the engine, and if he knew that it was defective, he was liable. In Keegun v. W. R. R. Co., 8 N. Y., 180, the boiler was defective and dangerous, and had been several times so reported to the defendant, which was entered on the defendant's books kept for that purpose. The defendant was responsible for using the engine, known to be defective. The following cases are referred to as explicitly stating the circumstances, under which the master is or is not liable. Williams v. Clough, 3 Hurl. and Nor., 259 ; Patterson v. Wallace, 1 McQueen, 748 ; Marshall v. Stewart, 33 Eng. L. & Eq., 1 ; Tarrant v. Webb, 866 ; C. L., 796 ; O'Donnell v. A. V. R. R. Co., 59 Penn., 246.

In Chicago & N. W. R. R. Co. v. Swett, Adm'r, 45 Ill., 201, the injury resulted in the death of the fireman, on the locomotive engine, from an original defective construction of the road, its bridges, culverts and appurtenances, the company was held liable on the principle that the corporation was bound to furnish to their servants safe materials and structures. See also Davis v. Milwaukee R. R. Co., 20 Mich., 105. The principle established by the authorities may be stated in this formula. The master is not liable for injuries which may have happened to a servant in his employment unless the master is culpable, that is, chargeable with negligence or carelessness either in respect of the act which caused the injury, or in the employment of the person who caused it, or keeping him in service after notice of his unfitness, or after, with the use of proper diligence he ought to have known it.

A railroad company is bound in the original construction of its road and appurtenances, to make it reasonably secure for the safe transportation of trains upon it, and also to keep the track in repair.

In order to discharge the latter duty the corporation must employ suitable persons and supply them with needful material to make repairs; and should also through its agent or agents, have a supervision over the road. In order to hold the company responsible to an employee (as a conductor on its train) for injuries sustained, because of the road or its appurtenances being out of repair, it must be shown that the company is in default in its duty, either by the selection of incompetent servants or an insufficient number to do the work, or failure to furnish proper material, or that the company had notice of the bad condition of the road, or is chargeable with negligence for not knowing.

The instructions to the jury, taken as a whole, are in accordance with the views herein expressed and those enunciated in N. O., J. & G. N. R. R. Co. v. Hughes (MSS.) *

---

* Those given at the request of the plaintiff embody correct rules of law with great clearness and precision.

We have given mature reflection to the principles adopted in the case last cited and reiterated in this opinion, and adhere to them as reposing upon sound reason and considerations of policy. All the great businesses of the world are carried on by means of agencies. Accidents are incident to all employments, requiring caution, skill and diligence. The employer has exhausted his resources for the safety of himself, his family and property, when he has been careful to select competent servants. He can do no more for the safety of his servants than to exercise reasonable circumspection in choosing those who are associated in a common business, and to supply them with proper and suitable materials, appliances and instrumentalities according to the nature of the service. When these duties have been performed, negligencies on the part of any of them are risks incident to the service, which each employee takes upon himself.

Every member of the community has an interest that the great and necessary business of the transportation of passengers and freight by the railroad companies, shall be promptly and safely done. It seems to us that the tendency of the rule of the non-liability of the corporation to an employee for the negligence of a fellow servant, subject to the limitations we have stated, is to stimulate the zeal and vigilance of employees to be careful and watchful to guard against accidents. At the same time we would hold these corporations to a faithful fulfillment of all the correlative duties incumbent upon them for the safety of those in their service.

It need hardly be remarked that very different responsibilities attach to railroad companies, and other public carriers, for injuries sustained by passengers and shippers of goods, or strangers for injuries sustained either in person or property, from the negligence of servants and employees.

The judgment of the circuit court is affirmed.