EVERETT HARDWARE CO. *v.* SHAW.

(Division B.   Feb. 15, 1937.)

[172 So. 337.   No. 32587.]

Watkins & Eager and Butler & Snow, all of Jackson, for appellant.

Barnett, Jones & Barnett and John E. Stone, all of Jackson, for appellee.

Argued orally by **Pat Eager**, for appellant, and by **Ross R. Barnett**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Appellee, E. L. Shaw, was plaintiff in the court below and brought suit against appellant, Everett Hardware Company, a corporation, for damages on account of a personal injury inflicted upon appellee by reason of the fact that appellant failed to furnish sufficient help to

perform work in which appellee was engaged, he being in the service of appellant. The declaration was in two counts, the first of which alleged that the appellant is engaged in the hardware business, and employs men to work therein, and salesmen, and owns and operates trucks for the maintenance of said business; that the appellee was in the employ of the appellant as a salesman, and, as such, doing and performing the work required of him by the appellant; that, because of such relationship, there were certain duties owing to appellee by appellant, among which was the duty to furnish reasonably safe places and instrumentalities with which to perform the work assigned, and to have available adequate help to do such work, but, notwithstanding this, the appellant breached and violated said duties, thereby causing personal injury to appellee. It was further alleged that about April 9, 1936, appellee was engaged in filling an order for five kegs of nails, and requested appellant, through its president, to furnish and send to his assistance helpers to assist in lifting said kegs onto a certain truck parked at or near the front of the store, which was used to make deliveries of orders, and that, notwithstanding the fact that the appellant well knew, or should have known, that the appellee alone was physically unable to lift said kegs, each weighing approximately 107 pounds, onto said truck parked as aforesaid, the appellant failed and refused to render any assistance to appellee; that the appellee then lifted one keg a distance of nearly four feet, which keg fell over and against the body of the appellee, causing him to suffer a severe blow to his body, and to sustain an inguinal hernia or rupture, alleged to be permanent, to suffer excruciating pain, to incur physicians' and medical bills, to lose time from his work and many hours of sleep, and to sustain a shock to his nervous system, to the damage of the appellee in the sum of $15,000.

The second count was predicated on the negligence of appellant in failing to provide a safe place to work, in

that the automobile truck, so parked as stated for the purpose of being loaded, was not properly placed, and appellant had failed to brace, brake, and check said truck, although it was resting on a downward slant on a paved street, as was well known to appellant, and that in lifting said keg onto said truck it rolled forward about twelve inches, causing said keg to fall and to hit and strike appellee and injure him as stated, all to the damage of appellee in the sum of $15,000.

The appellee testified that he was about 63 years old, weighed about 133 pounds, and had been employed by appellant since 1926; that shortly prior to his injury he had an attack of "flu" which confined him to his home or the hospital for more than a week, and that this was known to the appellant; that, when the order for five kegs of nails was received, he called the porter to assist him, and that the appellant told appellee that the porter was busy cutting the threads on a piece of pipe, and to "go ahead and load them and by the time you get through Alonzo (the porter) will be through and will rush them out," and, when appellee said he did not believe he could load them, the appellant said, "Go ahead and load them, or come and check out."

In reference to the loading of the kegs of nails, the appellee testified as follows:

"A. I picked the keg of nails up—I will, if allowable, show how I did that. I reached down on the ground and picked the keg of nails up—reached over and stuck my hands under here, and when I came up I didn't have strength enough—I got it up in the truck, got it up, got about one-third of the keg of nails on the truck, and the truck ran out from under it; and when it ran out from under it, it throwed it about this high, and it throwed it against me and struck me there.

"Q. Why didn't you throw the keg of nails on into the truck, into the body? A. I didn't have the strength to get in there with them.

"Q. Explain in detail about how far from the edge

of the truck here—suppose, Mr. Shaw, this is the back
of the truck here, and this is the floor of the truck body
—how far over the— A. (Interrupting). When I
reached, I turned it over—I don't believe I care to turn
it. When I caught the keg of nails, I reached down and
caught it under here, and put my hand right here; that's
where I caught the keg, and came up with it—it is thirty-
four inches to the top of the truck; when I pitched it
there, about this much of the keg, it hit the truck about
there, and the truck ran out.

"Q. You pitched it up trying to throw it thirty-four
inches high? A. Yes, sir; my hand there, and this one
under here, and when I started to pitch it up on there,
as it hit the edge of the truck, I will say about that much
of it caught—about that much, not enough for me to
shove it over.

"Q. As it struck the truck, what happened? A. It ran
out from under me.

"Q. What became of the keg of nails? A. It fell and
caught me right in there."

Appellee further stated that about this time the porter
came out and loaded the nails, and they proceeded to the
place where one keg was to be delivered; that he had felt
some pain on the way to this place that he did not feel
at first, and, when he reached the place where they were
to deliver one keg, he unbuttoned his clothes and dis-
covered a knot about the size of a hen egg. He procured
a truss from a nearby drug store, and then had a phys- '
ician to attend him. This physician testified that the in-
jury was an inguinal hernia, and was about the size of a
hen egg, and advised an operation, but the operation
had not been performed; and he also testified as to the
nature and extent of the injury, stating that it could
have been caused by either appellee's lifting the keg
of nails or by the falling of same against him.

There was also testimony that appellee had hemorr-
hages from his bowels, and the cause thereof could not
be located with any particularity by the physician, and

that the X-ray did not reveal it, and neither did a laboratory test.

The appellee also testified that he formerly received $165 per month, but that, on account of his age, his salary had been cut to $150 per month. The court excluded the statement of the reduction of appellee's salary because of his inability to prove the labor which he had formerly done in the service of the appellant.

There was also testimony for the appellee that the appellant's manager had called at the house to inquire as to appellee's condition, when he was laid off from his work, and that the appellant knew of his illness.

The appellant's manager was introduced by the appellee and testified as to the nature of the business and the employment of appellee, but such manager denied that he knew the nature and extent of the appellee's illness, or his capacity to lift or handle the nails. He admitted that he knew appellee was laid off, and that, when he asked about how he was getting along, he did not ask as to the particular ailment from which the appellee was suffering. This manager also testified that appellee had a right, when he needed help, to call therefor and procure same, and had done so on other occasions, but he denied the statements attributed to him that he told appellee if he could not do the work, to get his pay and check out, that some one who could do the work would be procured.

One of the assignments of error is that the court erred in refusing to grant a peremptory instruction on the first count of the declaration. The court did grant one on the second count thereof.

It is argued that there is no liability on the part of the appellant because the undertaking was voluntary, and that appellee was the best judge of his own strength, and that the job was a one man's job, and the rule only applies where more than one person would be required to perform the work.

We think the same rule applies to furnish a safe place

and instrumentalities with which to work, whether there is one or several men, and, as stated by the trial judge in ruling on the question, we see no difference when the application is to one man or several men, if they are required by the master to perform work.

It is true that primarily a man is the best judge of his own strength to do heavy labor, but, where he asks for help and the same is refused, and he is told to do the work or call for his pay and check out, such is not a voluntary undertaking, but is compulsory. In these modern times, when there are numerous unemployed, and jobs are hard to get, a man is not required to abandon his employment because, in his own judgment, he is not of sufficient strength, if required by the master, to perform certain work, and especially where the demand to do this work is accompanied by a threat of loss of employment if he does not do what he is directed to do.

Many of the cases referred to by the appellant use language indicating that the job was one where several men were required to do the work, but these cases proceed upon the principle that a man who undertakes voluntarily to do work which ordinarily would be performed by one man, without being coerced thereto by the master, does so voluntarily. The principles in these cases are not applicable to the case at bar, if the testimony of the appellee be accepted by the jury, because of the unwillingness of the appellee to perform the work alone, which was communicated to the master, who demanded that appellee either do the work or get his pay and check out.

We think the controlling principles which apply to the case at bar are sufficiently set forth in the case of Goodyear Yellow Pine Co. v. Mitchell, 168 Miss. 152, 149 So. 792, 150 So. 810.

The second point argued by the appellant is that the trial court erred in overruling its objections to appellee's evidence to the effect that he told the appellant's manager that he did not believe he could load the nails. This evidence was clearly admissible to carry to the appel-

lant knowledge of the appellee's physical inability to perform the work he was directed to do, and we see no objection that could be made to evidence that carried this knowledge to the mind of the appellant's representative. Indeed, the manager testified that he knew the appellee was laid up for a week, and, as he was an employee of appellant, and absent on this account, the jury had a perfect right to believe from the evidence and circumstances that the appellant had knowledge of the weakened condition of the appellee.

We also think there is no merit in the contention that the court erred in overruling appellant's objections to appellee's testimony in respect to his lifting capacity or strength. The appellee had long been employed by the appellant, and the age and physical condition of the appellee were pertinent in determining whether lifting the nails called for his strength alone, or for additional help.

It is next insisted that the court erred in granting for the appellee the following instruction: "The court instructs the jury for the plaintiff that if you believe from the preponderance of the evidence in this case that the defendant corporation, acting through its foreman, required and coerced plaintiff to pick up and attempt to load the keg of nails in question, and that plaintiff was not physically able to perform this task alone without subjecting himself to the danger of being injured, and the plaintiff's physical condition was known to the defendant, and that on account of the weight and size of the keg of nails, the only reasonably safe way to pick up and load said keg of nails under the circumstances, as shown by the evidence in this case, required another employee to assist plaintiff in lifting and loading said keg of nails, and the defendant failed or neglected to furnish another employee to assist plaintiff in picking up and attempting to load said keg of nails, and that defendant knew, or should have known by exercising reasonable care, that plaintiff needed another helper to assist him in lifting and loading said keg of nails, and that as a direct and prox-

imate result of the neglect or failure of the defendant corporation to furnish plaintiff with additional help, the plaintiff was injured, as shown by the evidence, if any, then it will be the sworn duty of the jury to return a verdict for the plaintiff.''

We do not find any error in this instruction as applied to the evidence in the case. We think it announces correct principles.

The judgment of the court below is accordingly affirmed.

Affirmed.

### ON SUGGESTION OF ERROR.

**Anderson, J.**, delivered the opinion of the court on suggestion of error.

It is true that appellee testified that the injury would not have occurred except for the improper parking of the truck. He testified further, however, that another helper would have avoided the injury, notwithstanding the faulty parking of the truck; in other words, that the want of sufficient help proximately contributed to the injury, and, according to his testimony, that the want of sufficient help was caused by the fault of appellant. Putting it differently—the improper parking of the truck and the want of sufficient help concurred in bringing about the injury.

Suggestion of error overruled.