MERIDIAN LAUNDRY CO., INC., et al. v. JAMES.

(En Banc. May 6, 1940. Suggestion of Error Overruled Jan. 20, 1941.)

[195 So. 689. No. 33974.]

Jacobson & Snow, of Meridian, for appellants.

122

Gilbert & Cameron, E. T. Strange, R. M. Holmes, and E. A. Dunn, all of Meridian, for appellee.

124

Argued orally by **E. L. Snow**, for appellants, and by **Chas. B. Cameron**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

The appellee brought this action in the circuit court of Lauderdale county against appellant to recover damages for a personal injury alleged to have been received by her in the capacity of servant of appellant through the latter's negligence. The trial resulted in a verdict and judgment in her favor in the sum of $5,000, from which judgment appellant prosecutes this appeal.

The ground of appellee's action is that appellant, in violation of the labor statute governing the working hours of women, Section 4653, Code of 1930, required her to work more than ten hours a day and sixty hours a week, which caused her to become so weakened physically that she was unable to perform some of the duties required of her, one of which was lifting and placing twelve-pound packages of linen on a shelf approximately five feet high.

She alleged that while so lifting and placing one of these packages, the strain was such as to rupture a ligament in her abdomen resulting in a falling of the womb.

We are of opinion the court erred in refusing appellant's request for a directed verdict, and we reach that conclusion upon the following considerations. Without any substantial conflict, the evidence showed the following facts: Appellant operated a laundry and dry cleaning business in the City of Meridian, and in connection therewith, in a separate building nearby, a linen rental supply business. The rental linen consisted of napkins, barber face towels and steam towels, smocks, table cloths, waiters coats and bib aprons. The linen room in size was fifteen by twenty feet. In the center of the room, there was a table used in handling the packages of linen. On one side of the room, there were two shelves twelve inches wide, one two feet above the floor level and the other a little over five feet above the floor level, on which the packages of clean linen were kept. There were bins in which soiled linens were temporarily placed. Appellee alone was in charge of this linen room. She had a key to it and went in and out to suit her convenience in the performance of her duties. Creel, with the assistance of Birdsong, delivered the packages of clean linen to the customers and brought back the soiled linen to be relaundered. For this purpose, they used a truck. Only two trips daily were required. In the morning about eight o'clock, they would leave with a load of clean linen to be delivered to customers, and in about two hours they would return with a load of soiled linen. Again, around two o'clock, they went out with another load of clean linen to be delivered to customers and returned about four o'clock in the afternoon with a load of soiled linen taken up. The soiled linen was deposited by Creel and Birdsong in the bins. The clean linen was brought from the laundry by a servant and placed on the table in the linen room. It was a part of appellee's duties to place the packages of clean linen on the shelves. She was required to use the top shelf for the bib aprons which were the heaviest

packages. During the trial, five packages of different kinds of linen were brought in and weighed in the presence of the jury. The heaviest package was bib aprons, which weighed twelve pounds, and the lightest was napkins, which weighed three and one-half pounds. It was her duty to assort the soiled linen in the bins for return to the laundry. A servant would come and return them for relaundering. The servants, Creel and Birdsong, handled the linen packages in and out of the linen room. There was a sewing machine in the linen room. Appellee was required to repair the damaged linen, and, when necessary, use the sewing machine for that purpose. Some days, three or four customers would come direct to the linen room for their purposes. Appellee was in poor health when she accepted employment with appellant, and continued so until she quit the service. There were only from six to eight of the bib apron packages (twelve pound packages) which had to be placed on the shelf daily. She testified that she was required to place these packages on the top shelf, and on account of her weakened condition, caused by over hours of work, that while so placing one of the packages, there was a rupture in her abdomen resulting in the falling of her womb, for which she was later operated on. She testified further that she told Mr. Hutton, the superintendent, of her physical condition and the strain of lifting bib apron packages to the top shelf, and asked that she be permitted to place them on the lower shelf or that she be furnished help; that he declined both requests, and told her that if she was not able to perform the work she could quit the job. In other words, briefly stated, her case was that on account of her poor health, it was negligence on the part of appellant to require her to put the twelve-pound packages on the top shelf or refuse to furnish help to do so. She gave no reason whatever why she did not stand on a chair, or a box, or some other kind of elevation in order to prevent undue strain in placing these packages.

It required from only thirty to forty minutes of appellant's time to place the clean packages of linen on the shelves as it came in, and about the same length of time to receive and assort the soiled linen as it came in. As stated, there were only two loads daily. No one occupied the linen room except appellee. There was something like seventy-five persons employed in the laundry, and all of them had to punch the clock when they came in to work and went out except the appellee. She often remained in the linen room more than ten hours a day, but a good deal of the time she had nothing to do. There was no real conflict in the evidence that any normal person, physically and mentally, man or woman, could have done the work required of appellee without injury or danger of injury to the body. That being true, appellant's superintendent was justified in stating to the appellee that if she were not able to do the work she could quit the job.

Section 4653 of the Code of 1930 provides, among other things, that it shall be unlawful for any firm or corporation to work a female in a laundry more than ten hours a day or more than sixty hours a week, except in cases of emergency or public necessity. Appellee's work was more piece work than hours work. When she got through with each piece of work, she had nothing to do until she was confronted with another piece, and often there intervened a considerable length of time. If the statute was violated, there was no causal connection whatever between its violation and appellee's alleged injury.

If appellee was injured, it was not caused by any negligence on the part of appellant; but was the result of the assumed hazards of the employment. Section 513 of the Code of 1930, abolishing the assumption of risk doctrine, has no application. It deals alone with risks caused by the negligence of the master, not risks incident to the employment. It is still the law that a servant accepting employment for the performance of specific duties takes upon himself the natural and ordinary perils incident to such service. Austin v. Mobile & O. R. Co., 134 Miss. 226, 99 So. 3; Howd v. Mississippi Central R. Co., 50 Miss. 178.

It follows that appellant's superintendent had the right to say to appellee when she complained of having to lift the twelve-pound packages to a shelf about five feet high that if she did not want to do it she could quit her job. Such lifting and placing was simply one of the risks of the employment—a necessary part of the employment, which, the evidence shows without any substantial conflict, could have been performed by any normal man or woman without danger.

Reversed and dismissed.

**Smith, C. J.,** delivered a dissenting opinion.

As I understand the appellee's evidence, it warrants a jury to find therefrom: (1) She was required to and did work continuously for more than eleven hours daily, except when occasionally she, at her request, was permitted to leave the building during working hours for a short time; (2) the shelf on which she was compelled daily to place twelve-pound packages was higher than her head; (3) the long hours of work coupled with the daily lifting of the twelve-pound packages to a shelf above her head so weakened her physically that her attempt to lift the last of the twelve-pound packages caused the injury of which she complains.

She did not in my opinion assume the risk of the appellant's negligence, if any, in this connection by continuing at work after its superintendent had declined to permit her to place the packages on a lower shelf or to furnish her with help to so do.

I am of the opinion, therefore, that the case was one for the jury and that the court below committed no error in refusing to grant the appellant's request for a directed verdict.

**Justice Ethridge** is of the same opinion.