BLUE BELL GLOBE MFG. CO., INC., *v.* LEWIS.

(In Banc. Nov. 25, 1946. Suggestion of Error Overruled Jan. 13, 1947.)

[27 So. (2d) 900. No. 36226.]

**Dent & Ward** and **Burkett H. Martin,** all of Vicksburg, for appellant.

688

Joseph E. Brown, of Natchez, for appellee.

Argued orally by **Burkett H. Martin,** for appellant, and by **Joseph E. Brown,** for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

This case originated in the Circuit Court of Adams County, where the appellee obtained a judgment against appellant for damages due to personal injuries received by her in its employ, from which judgment it appeals here.

Appellant, a manufacturer of overalls, shirts, pants and pajamas, employed a large number of people in its operations, and among them was the appellee here, whose job was that of a machine operator. This involved the handling of bundles of garments in process of manufacture. Appellee was, at the time of these events, about forty-five years of age, weighed two hundred and thirty-four pounds, was five feet and eight inches tall, was married to a sixty-five year old husband, and was the mother of two sons—one about twenty-three years of age in the armed forces of the nation, and the other about eleven years of age. She was compelled by necessity to work in order to help defray the expenses of the family. When she was first employed by appellants in August, 1942, bundle boys were used by appellant to handle these weighty and unwieldy bundles. In November, 1943, because of difficulty in securing help, her employer posted a notice on the bulletin board that the machine operators would have to handle the bundles themselves, but reduced their weight to twenty-seven or thirty pounds each.

About three weeks before her injury, appellee was engaged in basting belt loops on army trousers. These trousers, in bundles, she was required to get from the cutting table, go around a bin in the shape of a cradle, on which she stowed the bundles until moved to the machines for finishing on the opposite side of an aisle, and when completed she had to rebundle them and return them to the bin, the top of which was about thirty inches from the floor. If a bundle had to be piled on top of another

bundle before the first was removed, she had to lift the second bundle higher, and if a third, she had to lift it still higher. It is in the evidence that these operations were repeated as often as sixteen or twenty times a day. Appellee testified that "when the bin was full I would have to throw them shoulder or head high." She further testified that the bundles were "tied in the middle with a rope. You would lay the bundle on the rope and then draw it around them and hook them and pick up the bundle in the middle. They were so high we had to put our knee under them at times." She complained some about these bundles and the strain of handling them before she was hurt, and then and thereafter she complained very much more, and specifically. She contends, which appellant denies, that she was threatened with discharge if she did not continue to handle them like all the other machine operators, many of them young, vigorous, unmarried women under thirty years of age. We believe the foregoing statements sufficiently present a description of the employment and its nature.

On October 17, 1939, appellee underwent an operation at a Natchez hospital for a right inguinal hernia, the result was considered a complete cure thereof. When she applied for employment to appellant on August 28, 1942, nearly three years later, she was not suffering from this trouble, although the scar evidenced the operation. On her application for work, under the rules of appellant, she was required to submit to a physical examination by the company doctor. This she did, stating that the examination was thorough, and that she informed the examining doctor of the previous operation for hernia. At the conclusion of this examination, she was given a sealed report by the doctor to transmit to the assistant manager at the plant. This she did, and the assistant manager made a note in writing on a slip, she said, "Virgine Lewis, condition satisfactory." She did not know what was said in the report. Appellant denied that she made full disclosure of the previous hernia operation, and introduced wit-

nesses to testify that appellee boasted of hoodwinking the doctor, while she introduced witnesses to substantiate her statements. The jury heard this and the other evidence— in all of which on almost every material point there was sharp conflict—and accepted the testimony of appellee and her witnesses, and rejected that of appellant and its witnesses, by their verdict for appellee. She stated that she had said she was glad the doctor did not find her afflicted with hernia, or words to that effect, because if he had found that she was so afflicted, she would not have been able to work. Appellant, on the other hand, contended she said that she was glad the doctor did not discover her hernia, as if he had, she would not have gotten employment, or words of similar import. The jury here, too, believed her version of it.

So, if she had hernia when she was employed she was unaware of it, had concealed nothing from the examining physician, and was put to work with approval of her physical condition by appellant, after it satisfied itself by an examination by its employee, the doctor.

She continued to work under these conditions, without any bad results, until an evening in December, 1943, about four years after the original operation. This was approximately a month after the discontinuance of the aid to her, and others in like employ, from bundle boys, at the time the event took place which formed the basis of this lawsuit. She was asked this question: "About that injury in December 1943, tell the jury all about the facts and circumstances of that?" A. "On this particular evening, we were getting through with the army order and we were to go over on the commercial orders. We had big bundles and small bundles. And this last big bundle. . . I had worked one or two small bundles after I worked this big bundle. When I picked up this particular large bundle and put it on the bin it felt like a knife . . . That is when I felt this burning hurting almost like a knife. I tried to ignore it. In ten or fifteen minutes we went over on commercial line. I sat down and I got so weak I

couldn't work and this place in my side began to get bigger. I got up and went to the first aid room and told the nurse. I told her I had ruined my side. She said 'Let's don't think so.' I told her to feel the knot and she felt it and said, 'Let's don't call it a rupture, we will call it a gas pocket.' '' The nurse corroborated appellee as to the first aid room and the gas suggestion, but denied she could feel or see anything amiss. However, she further said she was unwilling to take any responsibility in the matter, and took appellee to a second doctor, then in the employ of appellant, who reported he found no hernia, but warned the nurse that if appellee had a recurrence of pain she should be put to bed, and that he would examine her again. Appellee testified that this doctor told her he found nothing alarming. She therefore returned to work some weeks later. The condition and pain recurred repeatedly, until finally she consulted her own physician, who informed her she had a most dangerous hernia, and that she must stop work at once, otherwise she was liable to develop strangulation. She stopped work. This condition was confirmed by still another doctor who diagnosed appellee's condition as being ''a recurrent right inguinal hernia. At the present time, on June 11, 1943, this mass is about the size of a lemon. It can be reduced and is located at the lower end of the old scar.'' When asked whether or not she had the operation performed, appellee replied: ''I wasn't able at the time and the scarcity of doctors I just didn't feel like I was able to go there and be cared for because he said it was dangerous,'' referring to the statement of her personal physician. She also said she had no means with which to have it done.

Appellant filed as assignments of error, the refusal of the trial court to exclude the evidence offered by appellee, and direct a verdict for appellant; charging that the verdict was against the weight of the evidence, and the law, and that it was error to overrule its motion for a new trial.

The controlling circumstances and theories of the parties as to the lawsuit are sufficiently reflected in the three

instructions to the jury, granted them respectively, and discussed post. In this connection, it is well to recall that appellee's condition was known to appellant but not to appellee, if we are to believe her testimony and that of her witnesses, which the jury did believe. Since we cannot say that the verdict was manifestly wrong, and cannot say that it was against the overwhelming weight of the evidence, it is our duty to affirm the judgment of the trial court based on the finding of fact by the jury.

Furthermore, however, the appellant challenges the granting to appellee of two instructions. The first reads as follows:

"The court instructs the jury for the plaintiff that if you believe from the evidence in this case that the plaintiff did not conceal any facts pertaining to her right inguinal region or any other physical condition from the defendant's examining physician, Dr. G. S. Hicks, and honestly disclosed to him her full knowledge of her condition and was approved by the said Dr. Hicks as physically fit and satisfactory and not having any rupture even though you may believe from the evidence that there was at the time of employment a rupture or weakness in the right inguinal region, nevertheless the plaintiff did not assume the risk of such condition provided you further believe that the plaintiff also thought herself to be physically fit to do the same."

The defense of appellant in the trial court was largely that appellee assumed the risk of her employment. Appellee combatted this assault upon her position by the answer that she did not assume the risk of such employment, and embodied her views in the charge to the jury, supra. Appellant argues here that this instrument is entirely too broad and places too great a burden upon it. The record above reflects that apellee did not know her condition when doing this onerous work, that the technical agents of appellant, employed to ascertain it, did know it, and failed to inform her of it, and negligently permitted her to continue this burdensome labor in ignor-

ance of the danger menacing, and finally overtaking, her. Section 513, Code 1930, now Section 1456, Code 1942, in its pertinent part, provides: "In all actions for personal injury to an employee, and in all actions where such injury results in death, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death results in whole or in part from the negligence of the master; . . ."

We think that the failure of the master to disclose to this woman her true physical condition, permitting her to continue to do this heavy work in their full knowledge through its doctors of its probable results, later actually developing, was negligence in the purview of this statute. See also, as somewhat in point, Hardaway Contracting Co. v. Rivers, 181 Miss. 727, 180 So. 800, although we are not basing our conclusion here upon the mere strain of the handling of these bundles by persons strong and well, or those not strong but who know they are not physically equal to the task. Liability here is based upon the appellant's negligence in permitting this strain upon this particular appellee, while, it, appellant, knew she was unequal to the task, through their specially trained doctors, while she did not suspect it, because of their failure to disclose it to her. We do not think that Meridian Laundry Co., Inc., et al. v. James, 190 Miss. 119, 195 So. 689, is in point here on the precise question involved. Neither do we think that the case of Harris et al. v. Pounds, 185 Miss. 688, 187 So. 891, cited by appellee, is decisive of the issue here. In fact, we have found and have had cited to us no case dealing with the special conditions of this case. We have carefully considered the instruction and find no fault with it.

The other instruction is as follows.

"The court instructs the jury for the plaintiff that if you believe from the evidence in this case that the plaintiff complained to the defendant that she could not lift the bundles safely without assistance, and if you further believe from the evidence that assistance was reason-

ably necessary for her in lifting the bundles and that such assistance was requested by her and by the defendant denied her and that defendant's superintendent in denying such assistance addressed to Mrs. Lewis words reasonably interpreted by a reasonable person a constituting a threat of discharge if she would not or could not lift the bundles without assistance, then the plaintiff was not required to abandon her employment and did not by continuing at work assume any risk of being strained by continuing to lift the bundles without help or assistance.''

Appellant contends that this instruction misled the jury because it was not supported by any testimony in the record. With this we cannot agree. Appellant admits that Everett Hardware Company v. Shaw, 178 Miss. 476, 172 So. 337, 173 So. 411, and Goodyear Yellow Pine Company v. Mitchell, 168 Miss. 152, 149 So. 792, 150 So. 810, and similar cases, justify the instruction, if the facts existed to support it. It is also claimed to violate the rule laid down in Meridan Laundry Company v. James, supra, on this phase of the suit. Appellee answers that the facts in this case at bar are materially different from the facts in the Meridian Laundry Company case, and do justify the instruction. In the instant case, unlike the case cited, appellee was "required to hoist unwieldy and cumbersome bundles of clothing . . . all at a time when the true facts showed that she had developed a hernia in this work and every reasonable inference indicates that the appellant was withholding from her the true nature of her physical condition.'' Appellee urges that quite a number of the numerous cases cited by appellant were decided prior to the adoption of Section 1456, Code 1942. It seems to us that a complete answer to all argument here is that appellee could not assume a risk of which she had no knowledge; and that the permission, and subsequent coercive insistence, of appellant, that appellee undertake and continue this work, respectively, when it had the means of knowledge, and actual knowledge, that she was unequal to it in her physical

condition, appellant was guilty of such negligence as to bring itself within the operation of the statute. It will be noted that the instruction dealt with the hypothesis "That she could not lift the bundles safely without assistance," and also saying "if you believe further from the evidence that assistance was reasonably necessary for her in lifting the bundles," and so forth.

The appellant asked and was granted by the court below the following instruction, more generous to it than the facts of the case fairly warranted:

"The court instructs the jury for the defendant that while it is the duty of the defendant to furnish its employees with a reasonably safe place to work and reasonably safe appliances with which to work, it is not an insurer of the safety of the place to work. The servant takes or assumes the ordinary risks of her employment. The employee or plaintiff assumes all risks naturally incident to her employment, if you believe from the evidence that plaintiff received her injuries as a result of the ordinary risks of her employment and that there was no negligence on behalf of the defendant, then you shall return a verdict for the defendant."

We call attention to the reference, in this instruction, to "ordinary risk of employment," "all risks naturally incident to her employment," and "that there was no negligence on behalf of the defendant." In the case at bar, the risk was not an ordinary one, and it was not naturally incident to appellee's employment, and there was negligence on the part of appellant, sufficient to justify the verdict.

Therefore, in our opinion, the verdict of the jury was correct, and the granting to her of these instructions not error, and the judgment of the trial court is affirmed.

Affirmed.

**Sydney Smith, C. J.**, did not participate in this decision.